I'm David Lowery, representing Mr. Wakefield. We appeal this case because we just didn't like the credibility determination of the ALJ and we didn't like the RFC determination of the ALJ, and those need to be reviewed by the court, but the main issue I want to talk about today is the number of jobs at Step 5, and this is kind of the next step beyond the Bayless case. Starting 10 years ago in November of 1997, I started submitting letters from government agencies saying there's no data source for these numbers, and as I've picked up more letters over the years, I've added those, and we have four of them in this case, beginning at transcript page 97 or page 178, depending on which set of numbers you want to rely on, and these numbers, these letters from government agencies basically say we don't have these numbers. These numbers don't exist, but vocational experts always testify to them, and my experience is that the uniform judicial response from this court right on down to the ALJs is hear no evidence, see no evidence, speak no evidence, acknowledge no evidence, and talk about no evidence. I've moved the government out of court, and the uniform judicial response is ignore the evidence. We won't talk about it, and if we pretend it doesn't exist, maybe this annoying lawyer will go away. Well, can I just focus you in on the Step 5 issue that you're saying? In your words, what is it that the ALJ didn't do that he should have done? Well, he failed to deal with the evidence. Well, what evidence? Because I can't figure it out. I mean, this may be a good enough reason just to send it back, and I'm going to ask counsel for the Commissioner the same question. But what exactly is it he didn't pay attention to? Where do the numbers come from? What numbers? I'm sorry to be obtuse, but I don't know what you're talking about. That's okay. So I'm just trying to ---- Okay. So your position is that what was wrong was that the vocational experts showed up and say, this is the job. Yeah. In the local economy, there's X, let's say, 500 jobs. In the national economy, there's half a million jobs. Right. But those numbers don't exist in any data set. And the exhibits beginning on page 97 from the government itself, Bureau of Labor Statistics, Bureau of the Census, and the Oregon Employment Division say that. Okay. So your position is that what was wrong was that the vocational experts' statement of how many of these jobs was available isn't so? It isn't so. And there's no data source from which that information could be derived. And the Ministry of Law judges won't ask about that. And basically, I rebutted the V.E. before the hearing even began by submitting this evidence. And no one wants to discuss this little problem of the government itself saying, we don't have these numbers. Okay. So your point is that there's not substantial evidence in the record to support the V.E.'s opinion that there were some ---- that there were enough jobs available in the local and national economy to support what he said. Not only is there not enough evidence. What's substantial evidence is what the test is. Yes. Not only is there not enough evidence, but I have provided affirmative evidence that these numbers don't exist. There's no place to get these numbers. Okay. Now, besides that issue, is there anything else that went wrong here? Yes, the credibility determination and the RFC determination. Okay. What specifically went ---- where is there error at the ---- let's keep going back up, the RFC determination? Well, the RFC determination depends in part on the credibility determination. Basically, the credibility determination is, what do these people know? I mean, they're not doctors. How would they know? But that's not really a correct basis on which to discount the testimony of the witnesses or the claimant. If you could discount witness testimony on that basis, you could always discredit witness testimony. The witnesses' testimony ---- Will they testify to you about what he did and his daily activities and whatnot? I beg your pardon? What did their testimony go to? It went to walking, use of the arms and hands, pain, fatigue, pace, speed or pace at which someone could do things, mental or emotional problems such as crying spells. And what was the reason that the ALJ gave for discrediting their testimony? Oh, there's no medical evidence to the same effect. And the government in its brief has contended that headaches and pain testimony is not supported by medical evidence. This is a bad back case. You know, the spine is kind of a mysterious organ, but there's no medical expert at the hearing to testify whether these things would be associated with the back problem or not. The treating physician seemed to believe the claimant. In the absence of having a medical expert at the hearing to say yes it is or no it's not, it's just medical speculation by the ALJ or the government here to say no, it's not. There's no real basis to say that what the ---- So he improperly discredited the witness' testimony, the family member's testimony. Yes. What else? And the claimant's testimony. And where did he go wrong there? Oh, everywhere. Same thing. Same thing. Okay. I remember when I was reading the, to refresh my recollection about the ALJ's decision, he expressed some concern about, I think when he was given the RFC, the claimant liked to play basketball a couple times a week or a day. I can't remember if it was every day or a couple times during the week. And when that sort of thing is used, it's like, well, there's never any evidence of how well or poorly somebody did something. Right. I understand that. I mean, they're shooting hoops and they're shooting hoops. Well, they may be shooting at a conventional basketball court that we're all familiar with, but that's not exactly established either. But assuming that were true, he might be missing every basket. But in the absence of evidence of how well or poorly he was doing it, we really don't have enough to know whether this is important evidence. Okay. Would you like to hold on to the remaining part of your time? Yes. Why don't we do that? All right. Ms. Martz. Good morning. Stephanie Martz on behalf of the Commissioner. There are really three areas that are being questioned on appeal. The first is what I would call the substantive areas dealing with the ALJ's decision, the credibility, the assessment of the medical evidence, and the assessment of the lay witness testimony. The second part of Mr. Lowery's appeal is the interpretation of what's required to be articulated in a residual functional capacity or an RFC assessment. And the third part is the decision of Bayless and whether that is sufficient to rely on to say that the expertise of a vocational expert is enough to establish a foundation for numbers of jobs. Excuse me. What your question posed to Mr. Lowery was, would this need to go back? Is there sufficient evidence at step five? The basis of the argument that the step five decision isn't supportive is based on the letters that are from the Bureau of Census, Department of Labor, and the Oregon Employment Division. What those entities have said is that they don't publish numbers of jobs by DOT or Dictionary of Occupational Title Code. They haven't said that there's no data source out there that a vocational expert could use to come up with numbers of jobs. So the fact that these letters exist in the file, they don't go to what the vocational expert used. So they're really irrelevant to the issue. Can I ask you a slightly different question? And that is, it seems to me that the ALJ may well have disregarded or discounted the limitations that Wolf suggested. And Wolf's notes are incomprehensible. So I don't really know whether he did or he didn't. Do you have a view on that? Because it looks like he didn't pay attention to at least the ones that are decipherable. The ALJ? Uh-huh. I believed he found that the notes weren't consistent. I believe Dr. Wolf's notes largely consist of refills of prescription medication. From what I can tell and what I can read, and I'll agree with you, they're not very legible, I didn't see anything in those notes that would contradict the ALJ's findings. Well, didn't Wolf say that he couldn't lift 20 pounds or rarely could, had difficulty working full time, he couldn't crunch or climb? And I don't see where those limitations were included by the ALJ or taken. The ALJ rejected them as being inconsistent with the treatment notes and not supported by the contemporaneous notes. With his own treatment notes or somebody else's? Any of the treatment notes. And most of the treatment notes during the relevant time, because when we're looking at a very short period here, his alleged onset date is in September of 2001, and he needed to show disability by March 31, 2002, because that was his date last insured. Dr. Wolf was the primary treating physician during that period of time. So any contemporaneous notes would be coming from Dr. Wolf, which there wasn't much there. Dr. Wolf's ultimate opinion, where he gives these limitations, wasn't made until 2003, well past the ending date of March 2002. And they're inconsistent in some parts, in some respects, inconsistent with Dr. Hamill's treatment notes, who was treating him starting in September 2002 later. So there's inconsistencies between the medical evidence, the reports, and the opinions that the ALJ has the responsibility to resolve the conflicts and the ambiguity. And here he did. It was a reasonable interpretation of the evidence. The ALJ actually accepted a large number of the opinions and the testimony of Mr. Wakefield. I mean, he did find limitations in walking, sitting, standing, to a large degree. What he didn't accept was that he wouldn't be able to work. He didn't accept the crying spells, the need to elevate legs, and the lifting restrictions that he could only lift 10 pounds at maximum. The ALJ found 20. And the ALJ found that the opinions that the doctors provided, they didn't support them, they didn't explain what they were based upon, and there wasn't support in the treatment notes. And this Court has found that that is an adequate reason to reject opinions. In the credibility analysis, the ALJ can reject lay witness testimony if it conflicts with the medical evidence, and that was one of the reasons that he gave to reject it. And as far as the claimant's testimony, the issues that Mr. Lauer seems to be skipping is that the claimant has the obligation to show the existence of a medical impairment that could reasonably be expected to produce the symptoms or the pain. And in this case, the crying spells, there was no diagnosis of a mental impairment. And when the treating physicians were even asked if there was a psychological impairment, both Dr. Wolf and Dr. Hamel responded negatively. The left wrist, the hand impairment that was alleged that he had problems holding and gripping, there was no diagnosis of a hand impairment that would cause such limitations. The claimant testified to problems with nausea, but the only evidence in the medical records of any complaints of nausea and vomiting was in 1997 and 1998, prior to his alleged onset date. And at that time, the most that the doctors could find was that it was related to stress, not to a medical impairment. So in sum, there is a substantial evidence to support the ALJ's interpretation of the evidence. He resolved the conflicts and the ambiguities. His interpretation was reasonable, and that meets the substantial evidence test that this Court must apply. Thank you. Ms. Martz, Mr. Lauer. Thank you. Counsel has, in effect, assumed that crime spells would have to be produced by a mental impairment, and therefore assumes that crime spells could not be related to a physical impairment causing pain. That strikes me as a rather naive position to take. Why would we assume any such thing? In addition, contrary to what opposing counsel said, the very first letter from the Bureau of Labor Statistics does say, we don't have the data, State agencies don't have the data, and we know no source to get the data. And if there's no data source, at some point, it's kind of like the law of vanishing presumptions. You know, if somebody produces evidence that says this is not here, it's incumbent on the other party that says it is to prove it. Where did the ALJ go wrong in not accepting Dr. Hamel's assessment? In not accepting either assessment. I'm sorry? In not accepting either assessment, he failed to recontact the doctor to clarify whatever issue or problem he thought existed. It's easy enough to write a doctor and ask, what about this? But ALJs chronically will not do that. I've only once seen that happen. It just won't happen. And I think the reason is they're just afraid of what they're going to get back. Thank you. All right. Thank you, Counsel. The matter just argued will be submitted and will next to your argument in Brackenberry. Brackenberry is one that has the best coffee in Africa. I know. I apologize. Yeah. Jeez. Ugh. I do that in immigration cases too. I get them confused. Ugh.
judges: Rymer, Nelson, Paez